# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 20, 2011

## STATE OF TENNESSEE v. LAMONT HOGAN

**Appeal from the Circuit Court for Dickson County**
**No. 22CC-2009-CR-739     Robert E. Burch, Judge**

### No. M2011-00113-CCA-R3-CD - Filed August 18, 2011

The Defendant, Lamont Hogan,[1] pled guilty as indicted by the Dickson County Grand Jury for sale of less than .5 grams of cocaine, a Class C felony, and sale of a counterfeit controlled substance, a Class E felony, with the length and manner of service for the sentences left to the discretion of the trial court. Following a sentencing hearing, the trial court sentenced the Defendant as Range III, persistent offender to ten years for the Class C felony conviction and a concurrent four years for the Class E felony conviction. The trial court ordered the Defendant to serve his total effective sentence of ten years in the Tennessee Department of Correction. In this appeal as of right, the Defendant contends that the trial court erred in denying alternatively sentencing. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court are Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JOHN EVERETT WILLIAMS, JJ., joined.

William Bradley Lockert, III, District Public Defender, and Richard D. Taylor, Jr., Assistant Public Defender, for the appellant, Lamont Hogan.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Dan Mitchum Alsobrooks, District Attorney General; and Billy Henry Miller, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

---

[1] For the purposes of this opinion, we adhere to the name of the Defendant as listed in the indictment. However, it appears from the record that the Defendant's name is Laterone Lamont Hogan.

At the guilty plea submission hearing held on June 9, 2010, the Defendant admitted that he had sold cocaine and a counterfeit controlled substance. Before the Defendant pled guilty to the offenses charged in the indictment, the trial court advised the Defendant that his sentence would be determined following a sentencing hearing. The trial court also advised the Defendant that if the State were to recommend a sentence at the hearing, the court would not be bound by that recommendation.

At the sentencing hearing held on December 7, 2010, Agent Jimmy Mann of the 23rd Judicial District Drug Task Force testified that the Defendant had agreed to act as an undercover informant in exchange for the State's recommendation that he receive a community corrections sentence. Agent Mann stated that the Defendant was told that he needed to "buy from bigger level dealers, not street level dealers" in order to fulfill his agreement. Agent Mann said that the Defendant drafted a list of eight "big level dealers" but that the Defendant did not fulfill his obligation with the State because the Defendant only bought from one of the dealers on the list.

Agent Mann said that the Defendant only bought from six people and that only one of the people was on the agreed upon list. Agent Mann admitted that each buy was supervised by the drug task force and that the Defendant participated in "between" 10 and 20 felony buys. He admitted that one person on the agreed-upon list had been arrested, that another person had been implicated in a murder, and that another was a member of the Defendant's family. He also admitted that the "word got out on the street that [the Defendant] was out doing buys." He said that he told the Defendant that the Defendant was not fulfilling the agreement by continuing to buy from the people who were not on the list. He said that another agent took over the Defendant's case in August but that the Defendant did not make any more progress on the list once the new agent took the case.

The Defendant testified that he drafted a list of ten dealers and that he ultimately bought from two of the people on the list. He explained that some of the people on the list were in jail, one had been killed, and another one was running from the police. The Defendant said that he attempted to buy from his uncle but that his uncle told him that he was no longer "in the dope angle" because he had obtained a job "driving trucks." He stated that an inmate was calling people and telling them that he was "out on the street to snitch on folks." He stated that they came up with another list of dealers approximately two months ago and that they talked about "doing a reverse," whereby he would "be actively engaged in the sell of cocaine." He said that the task force never contacted him again about the updated list or the "reverse." He said that he bought from nine people and that the tenth person would not get in touch with him. He stated that he was willing to testify against the people that he bought cocaine from and that he had a job at "A and E Construction" waiting for him if "things worked out."

On cross-examination, the Defendant clarified that he bought cocaine from a total of nine people and that only two of those people were on the original list. He stated that the rest of the people he bought from were on the updated list. He admitted that while he was on bond, he tested positive for cocaine and that he had five prior felony convictions and several misdemeanor convictions. He also admitted that he had been on community corrections and probation and that on both occasions, he was sent to the Tennessee Department of Correction for violations. He explained that he would be successful on community corrections this time because he was "trying to change [him]self" and "trying to do right."

Aaron Holder, the Defendant's driver for purposes of his work as an undercover confidential informant, testified that he drove the Defendant to a "few" buys. He said that at that time, Agent Mann was not working with the Defendant. He said that the Defendant was attempting to buy from Eddie Dixon and that the Defendant called Mr. Dixon 20 or 30 times. He said that Mr. Dixon gave the Defendant "the run around" once the Defendant finally spoke with him. He said that he heard rumors that some people refused to deal with the Defendant because he was "compromised."

Agent Mann testified on rebuttal that the Defendant only purchased from one dealer on his list and that once the Defendant began working with the other agents, the Defendant did not purchase from any of the dealers on the new list. He said that the Defendant had only purchased cocaine from seven people, only one of whom was on the agreed upon list.

In sentencing the Defendant, the trial court found that it was not bound by any agreement between the State and the Defendant, stating

> They can make an agreement with the [S]tate and the [S]tate can recommend whatever in accordance with the agreement; but I am not bound by that. I do not take them into account. I sentence defendants on what they deserve based on the Sentenc[ing] Act and the fact that somebody rolls on somebody else is of no consequence to me.

In setting the length of the Defendant's sentence, the trial court found that other than a few misdemeanor convictions that it would not accord a great deal of weight, it did not find any enhancement factors to apply. The trial court also did not find any mitigating factors to apply. Accordingly, the trial court imposed the minimum sentence in the Defendant's sentencing range for each conviction. In denying probation, the trial court found that the Defendant was not a good candidate for probation because the Defendant had "been unsuccessful both on community corrections and probation" and because the Defendant had tested positive for cocaine while on bond.

ANALYSIS

The Defendant contends that the court should have considered his efforts with the drug task force in determining whether he should have received an alternative sentence pursuant to Tennessee Code Annotated section 40-36-106. The Defendant also contends that the sentence imposed by the trial court was excessive because the court gave "no due regard . . . to sentencing options, such as the Community Corrections Program." The State responds that the Defendant has waived review of his issue because he failed to include the guilty plea hearing transcript.[2] The State further responds that the trial court's denial of alternative sentencing is supported by the record.

To the extent that the Defendant argues that the trial court should have considered his efforts as an undercover informant, the record belies the Defendant's assertion that he was compliant with the State's agreement. Indeed, the State refused to recommend a community corrections sentence at the sentencing hearing. Moreover, even if the State had recommended a community corrections sentence, the trial court was not bound to sentence the Defendant in accordance with the recommendation. See Tenn. R. Crim. P. 11(c)(1)(B) (providing that when a defendant agrees to plead guilty in exchange for the State's sentencing recommendation, the State's sentencing recommendation is not binding on the trial court).

To the extent that the Defendant argues that his sentence was excessive, this argument is without merit. The Defendant was sentenced as a Range III, persistent offender to ten years for the Class C felony and four years for the Class E felony. The Defendant received the minimum sentence for each conviction. See Tenn. Code Ann. § 40-35-112(c)(3), (5) (providing that the minimum Range III sentence for a Class C felony is ten years and that the minimum Range III sentence for a Class E felony is four years).

In his brief, the Defendant cited cases and statutes relating to the trial court's consideration of enhancement and mitigating factors in setting the length of a defendant's sentence. Here, the trial court did not find any enhancement or mitigating factors. Additionally, as previously stated, the Defendant received the minimum sentence within his range for each conviction. The Defendant's apparent main contention is that the trial court erred in denying alternative sentencing. However, the Defendant did not state why he should have received a community corrections sentence or why the trial court erred in failing to give him a community corrections sentence. Indeed, the Defendant only provided one sentence of argument in his brief on the actual issue before this court – the denial of alternative sentencing. The Defendant also failed to cite to the record or cite any authority in support of his one-sentence argument on this issue. Rule 10(b) of the Tennessee Rules of the Court

---

[2]The transcript was submitted as a supplement to the record after the State had filed its brief.

of Criminal Appeals provides, "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Accordingly, we conclude that this issue is waived.

<u>CONCLUSION</u>

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE